**David WITHERSPOON, Appellant,**

v.

**Dorothy WITHERSPOON, an Incompetent, Appellee.**

Court of Appeals of Kentucky.

Dec. 16, 1955.

Rehearing Denied May 11, 1956.

———◆———

Robert Hubbard, Rollin Gibbs, Louisville, for appellant.

Charles W. Dobbins, Louisville, for appellee.

MILLIKEN, Judge.

This is an appeal from a judgment refusing to grant the appellant, David Witherspoon, a divorce because of the incurable insanity of his wife, Dorothy R. Witherspoon. Mr. Witherspoon's action was brought under KRS 403.020, Section 5, Subsection (a) and his appeal was brought here upon a stipulation of facts in accordance with CR 76. The cited statute permits divorce from the incurably and permanently insane after the proper safeguards are observed, including the testimony of two or more psychiatrists that such insanity, in their opinion, is permanently incurable. This case turns upon that provision of the statute which requires that "no divorce shall be granted under this subsection unless such permanently incurably insane person shall have been confined in an insane asylum, hospital or other similar institution for a period of not less than five successive years prior to the filing of the petition for divorce * * *."

It was stipulated in part that "The proof showed: (a) Two physicians competent in psychiatry testified that the defendant is incurably insane; (b) that the defendant was committed to Central State Hospital July 1, 1948, and was continuously confined there until March 21, 1949, at which time defendant was allowed to leave the said Central State Hospital on a trial visit and live in the home of her mother, Mrs. Esther Rogers, at Middletown, Kentucky; (c) that her mother, Mrs. Esther Rogers, is and was at all times during the period in question an employee of said hospital; (d) that the defendant, while in her mother's home as aforesaid, was discharged from said hospital in September, 1951, and committed to her mother's custody and control, and that the defendant was re-committed to said hospital in September, 1952, and is still confined to said hospital. Her mother, Mrs. Rogers, being an employee of said hospital, gave in substance as her reason for re-committing the defendant that she was afraid to leave her daughter at home for fear the defendant might burn the house down, stating: 'The more I thought, well, suppose she would burn the house down, or maybe she would think "Well, this is a good time for me to go out," * * *."

The guardian ad litem for Mrs. Witherspoon stated in his report that "there is no record that defendant (Mrs. Witherspoon) was ever restored, by judgment or otherwise, to the status of a person of sound mind," and that her husband, the appellant, is a strong and able-bodied man who earns approximately $4,500 a year. There appears to be no question as to the willingness of the appellant to support his wife, only a desire upon his part to be free to live as normal a life as possible under the circumstances. In his order refusing to grant the divorce, the chancellor stated that he had refused the divorce "solely because of defendant's (Mrs. Witherspoon's) recurring absences (particularly September, 1951, to September, 1952) from Central State Hospital * * *."

It will thus be seen that the legislative purpose of making incurable insanity a ground for divorce may be frustrated by removal of the patient from an institution for ever so short a time during the five year period prior to the filing of the action for divorce. Appellant urges us to construe the statute liberally with a view to promoting its objective and carrying out the intention of the Legislature. KRS 446.080; Tipton v. Tipton, 309 Ky. 338, 217 S.W.2d 799.

This court has not heretofore been confronted with the specific problem presented here, but such a problem was presented in the Maryland Court of Appeals, Dodrer v. Dodrer, 183 Md. 413, 37 A.2d 919, 922. The Maryland statute is analogous to the Kentucky statute except that three years of confinement are required instead of five. In that case the incompetent had been released to a private person outside the hospital, but was visited at regular intervals and was always under supervision by the hospital. In granting the divorce in such circumstances, the Maryland court declared: "The fact that a patient is harmless enough to be placed outside of the hospital in a private home, although still kept under hospital supervision, does not indicate that she is not incurably insane. It is not intended to grant the right of divorce only from those persons who are so violently insane that they have to be incarcerated

at all times. The test is not the manifestation of the mental disease. It is permanence and incurability."

After earnest consideration, it is the consensus of this court that it would be contrary to the statute to permit the granting of the divorce on the present state of facts. Any modification of the statute is a matter for the Legislature.

The judgment is affirmed.